IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DEREK K. McQUAIG, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:19CV00824 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| ANDREW SAUL, | ) | By: Hon. Glen E. Conrad |
| Commissioner of Social Security, | ) | Senior United States District Judge |
| | ) | |
| Defendant. | ) | |

Plaintiff Derek K. McQuaig has filed this action challenging the final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. Jurisdiction of this court is established pursuant to 42 U.S.C. § 405(g).

This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks and citation omitted). Thus, "the threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154 (2019). In reviewing for substantial evidence, the court does not re-weigh conflicting evidence, make

credibility determinations, or substitute its own judgment for that of the Administrative Law Judge. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).

The court previously referred this case to a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and Standing Order 2019-6. On February 16, 2021, the magistrate judge submitted a report in which he recommends that the court affirm the Commissioner's final decision. Plaintiff has filed objections to the magistrate judge's report, and the matter is now ripe for the court's consideration.

Plaintiff was born October 16, 1966, and is 54 years old. (R. 1545.) He completed high school and previously worked as a communications engineer. (R. 37, 48, 1545.) Plaintiff has not worked on a regular and sustained basis since 2008. (R. 1533, 1602.) On January 23, 2014, Plaintiff protectively filed a Title II application for a period of disability and disability benefits. (R. 11, 178, 1531.) In filing his claim, Plaintiff alleged that he became disabled for all forms of substantial employment on January 1, 2008, due to hip pain, digestive disorders, hypertension, posttraumatic stress disorder, cervical and knee impairments, fibromyalgia, and chronic obstructive pulmonary disease. (R. 178–82, 204.) Plaintiff later amended the alleged onset date to June 20, 2012. (R. 11, 1531.) He now claims that he has remained disabled to the present time. The record reflects that Plaintiff met the insured status requirements of the Social Security Act through the fourth quarter of 2013, but not thereafter. (R. 1532.) Consequently, Plaintiff is entitled to a period of disability and disability benefits only if he establishes that he became disabled for all forms of substantial gainful employment on or before December 31, 2013. See 42 U.S.C. §§ 416(i), 423.

Plaintiff's application was denied on initial consideration and reconsideration later that year. (R. 1531.) He then requested and received a de novo hearing and review before an

Administrative Law Judge. In an opinion dated March 24, 2017, the Law Judge determined, after applying the five-step sequential evaluation process, that Plaintiff was not disabled on or before his date last insured. See 20 C.F.R. § 404.1520.[1] The Law Judge found that Plaintiff suffered from several severe impairments through that date, including bilateral hip avascular/aseptic necrosis with total right hip replacement, degenerative disc disease of the lumbar spine, anxiety disorder, history of Crohn's disease and colitis, knee arthritis, posttraumatic stress disorder, major depressive disorder, and history of attention deficit/hyperactivity disorder. (R. 13.) Despite these impairments, the Law Judge determined that Plaintiff retained the residual functional capacity to perform sedentary work, with various exceptions. (R. 17.) Given such a residual functional capacity, and after having considered plaintiff's age, education, and prior work experience, the Law Judge determined that Plaintiff was unable to perform any past relevant work through the date last insured. (R. 23.)

However, the Law Judge found that Plaintiff retained the capacity to perform other work roles existing in significant number in the national economy. (R. 24.) Accordingly, the Law Judge ultimately concluded that Plaintiff was not disabled at any time from June 20, 2012, the alleged onset date, through December 31, 2013, the date last insured, and that he was not entitled to a period of disability or disability insurance benefits. See 20 C.F.R. § 404.1520(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Plaintiff appealed to this court.

---

[1] The applicable evaluation process requires the Law Judge to consider, in sequence, whether a claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and (5) if not, whether he can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4). "The claimant has the burden of proof for the first four steps, but at the final, fifth step the Commissioner bears the burden to prove that the claimant is able to perform alternative work." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). If a decision as to disability can be reached at any step in the process, further evaluation is unnecessary. 20 C.F.R. §§ 404.1520(a)(4).

By memorandum opinion and order entered March 29, 2018, the court remanded plaintiff's case to the Commissioner for further development and consideration. See McQuaig v. Berryhill, No. 7:17-cv-00323, 2018 U.S. Dist. LEXIS 53602 (W.D. Va. Mar. 29, 2018). The court held that the Law Judge failed to account for all manifestations of Plaintiff's conditions in the hypothetical questions posed to the vocational expert and failed to specify what lesser weigh he accorded the medical opinions of Plaintiff's treating physician, Dr. John F. Gaylord. Accordingly, based on several decisions, including the decision of the United States Court of Appeals for the Fourth Circuit in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), the court found good cause to remand the case to the Commissioner for further development and consideration.

On remand, the Commissioner assigned the case to the same Administrative Law Judge for a supplemental hearing and decision. The Law Judge issued a new decision on April 19, 2019. In his second opinion, the Law Judge again determined that Plaintiff was not disabled at any time from the alleged onset date through his date last insured. The Law Judge concluded that Plaintiff suffered from several severe impairments during the relevant period, including "bilateral hip avascular/aseptic necrosis with a total right hip replacement; degenerative disc disease of the lumbar spine; anxiety disorder; history of Crohn's disease and colitis; knee arthritis; posttraumatic stress disorder; major depressive disorder; history of attention deficit/hyperactivity disorder; and alcohol abuse." (R. 1534.) However, the Law Judge concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the requirements of a listed impairment. (R. 1534.) The Law Judge assessed Plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that, through December 31, 2013, the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR [§] 404.1567(a) with exceptions. The

> claimant could never climb, crouch, crawl, and kneel, and could occasionally stoop and balance. He had deficits in concentration/attention at the mild level and moderate limitations in persistence and pace that led him to being off task up to a maximum of ten percent of the day (apart from regularly scheduled break periods). The claimant could perform simple tasks of a routine, repetitive nature that require no more than simple instructions be followed. He could have up to occasional interaction with the public, coworkers, and supervisors, but with no direct interaction with large crowds of unfamiliar persons. The claimant requires a cane for ambulation beyond fifty feet.

(R. 1537.) Given such a residual functional capacity, and after considering testimony from a vocational expert, the Law Judge found that Plaintiff was unable to perform any of his past relevant work through the date last insured. (R. 1545.) However, based on the vocational expert's testimony, the Law Judge ruled that Plaintiff was capable of performing alternative work roles existing in significant number in the national economy.[2] (R. 1545–46.) He listed such specific

---

[2] In questioning the vocational expert at the administrative hearing, the Law Judge posed the following hypothetical question for the expert's consideration:

> So, and looking at work from the past 15 years and being in [the area of a sedentary, skilled, SVP eight job], and in individual ranging in age from early 40s to early 50s, and with a formal education to high school as well as training in the military. Now, if such individual was capable of sedentary work as sedentary is defined in the Dictionary for Occupational Titles, as well as in our regulations, would that be lifting of no more than 10 pounds, and that would only be occasionally, nominal amounts frequently, standing or walking, absolutely a maximum of no more than two hours in a full eight hour work day, sitting for six if not all the way up to eight in that work day, as required, all the way up to eight. No requirements for any climbing, or crawling, or crouching, or kneeling activity, none of those postural movements and no more than occasional in terms of stooping or balancing. And a deficit in concentration and attention at a mild level and at a moderate level with difficulty with persistence and pace would lead to being off task up to 10 percent in a work day. And all this is with the ordinary breaks that an employer would provide, this would be different than the off-task percentage. Ordinary scheduled breaks. And with that, the individual would be able to, within those parameters, the individual would be able to perform simple tasks of a routine, repetitive nature requiring that no more than simple instructions be followed, and with up to occasional interaction with others in the workday, and that would be public, supervisors, workers, up to occasional. So, it'd be a total of up to one-third of a full workday, and with no direct interaction with large crowds of unfamiliar persons. And I will also add that hearing loss is involved, but it is correctable with hearing aids that are prescribed and used. Would there be work you could identify that fits within all those parameters, including the off-task behavior?

5

jobs as an "Addressing Clerk" or "Assembler." (R. 1546.) The Law Judge accordingly concluded that Plaintiff was not disabled at any time from the alleged onset date through the date last insured and thus not entitled to disability insurance benefits. See 20 C.F.R. § 404.1520(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Plaintiff has now appealed to this court.

While Plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159–60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

As previously noted, the court referred the case to a magistrate judge for a report setting forth findings of fact, conclusions of law, and a recommended disposition. In his report, the magistrate judge recommended that the court affirm the final decision of the Commissioner denying Plaintiff's claim for a period of disability and disability insurance benefits. Succinctly stated, the magistrate judge determined that substantial evidence supports the Law Judge's decision in all relevant respects. The plaintiff has objected to the magistrate judge's report and recommendation.

---

(R. 1585–87.) In response, the vocational expert identified multiple jobs in the national economy that the hypothetical person could perform despite his exertional and nonexertional limitations, including "addressing clerk" and "assembler." (R. 1587.)

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. The Law Judge's opinion reflects a thorough evaluation of Plaintiff's medical problems and the extent to which they affected his ability to work. Although Plaintiff suffered from various impairments prior to his date last insured, substantial evidence supports the Law Judge's assessment of his residual functional capacity and his determination that Plaintiff was not disabled for all forms of substantial gainful employment on or before December 31, 2013, the date last insured.

The medical record shows that Plaintiff received regular treatment at the Salem VA Medical Center. (R. 385–466.) Plaintiff attended a primary care consultation with Christopher Lentz, PA-C, on March 28, 2012, who diagnosed avascular necrosis, depression, and Crohn's disease, and later with hypertension and chronic pain. (R. 593, 607–08.) The medical record shows that Plaintiff was treated successfully with Tylenol #3. (See R. 397, 421, 750) ("[Plaintiff] is on [T]ylenol #3 prn for his chronic pain which he finds helpful. The [T]ylenol #3 allows him to do his chores around the house, yardwork, and ADL's.") (see also R. 431–32, 571–72, 636) ("[Plaintiff] is on [T]ylenol with codeine for pain which he finds controlled."). Plaintiff has acknowledged that his Crohn's disease was asymptomatic during the period at issue. (Pl.'s Mem. Supp. Mot. Summ. J., ECF No. 11, at 25.)

On March 28, 2012, Plaintiff also received a psychiatric diagnosis of "Anxiety Disorder NOS," "R/O PTSD," and "Major Depressive Disorder, chronic, moderate" from Dr. Christina Shook. (R. 598–602.) The record indicates that Plaintiff received treatment for these issues on multiple occasions in 2012 and 2013. (R. 561, 590, 593.) Despite Plaintiff's depression and his reports of suicidal ideation, treatment providers found that Plaintiff did not pose a risk of harm to himself or others between his amended onset date and his date last insured. (See R. 532) ("There

is minimal risk for self-harm, suicide, or harm to others at this time. [Plaintiff] is judged not at imminent risk of harming self or others at this time."); (R. 564) ("[T]he veteran's current risk potential for suicidal behavior is: LOW RISK. Patient judgment NOT to be at significant risk for self harm."); (R. 596, 602) ("There is minimal risk for harm to self or others at this time. [Plaintiff] is judged NOT at imminent risk of harming self or others.")  The record also included psychiatric reports of an intact memory, good attention, and good insight/judgment. (R. 595, 601.)

Starting in June 2014, after Plaintiff's date last insured, and through July 2018, Christopher Lentz, PA-C and Dr. John Gaylord, M.D., prepared medial opinions and impairment questionnaires on behalf of Plaintiff.[3] (R. 477–81, 483, 485–89, 617–21, 1478–81, 1819–23, 1824–28.) The opinions asserted that Plaintiff's symptoms existed as far back as 2007, (R. 621, 1823, 1828) or 2008, (R. 481, 489, 1481). The medical opinions suggested difficulty with continuous sitting, standing, or walking, that Plaintiff could either occasionally or never lift or carry 10-20 pounds, and that Plaintiff would never/rarely be able to lift or carry more than 20 pounds. (R. 479, 487, 619, 1821.) The medical opinions also pointed to the need for frequent breaks during the workday and the need for Plaintiff to be absent from work more than three times per month. (R. 480, 488, 489, 620, 621, 1481, 1822, 1823, 1828.) The questionnaires also referenced mental and emotional impairments. (R. 1478–81, 1824–28.)

Finally, the court notes that state consultative medical examiners Thomas M. Phillips, MD, and Jack Hutcheson, MD, reviewed Plaintiff's treatment records during the time period at issue. In their respective reports on May 14, 2014, and May 13, 2014, the physicians acknowledged that Plaintiff has "a history of severe joint problems," but concluded that "there is not enough evidence

---

[3] The court notes that although one medical report lists "Bernard Dunn. Jr., M.D." as the "Doctor's name," that report is signed only by Mr. Wentz and Dr. Gaylord. R. 485, 489.

to make a full decision on severity before the [date last insured]." (R. 87, 97.) Moreover, on May 13, 2014, state consultant Howard S. Leizer, Ph.D., opined that as to anxiety and affective disorders, Plaintiff "does have a history of some severe disorders, but there is insufficient information to make a decision on severity before the [date last insured]."[4]

In his objections to the report and recommendation, Plaintiff raises several arguments. Plaintiff first asserts that the Law Judge did not properly weigh the medical opinions of Plaintiff's treating physician and treating physician assistant. In determining whether a claimant is disabled, a Law Judge must consider the medical opinions of the claimant's treating physician in compliance with 20 C.F.R. § 404.1527(c)(2).[5] Dowling v. Comm'r Soc. Sec. Admin., 986 F.3d 377, 384 (4th Cir. 2021). Section 404.1527(c)(2) sets forth the "'treating physician rule,' under which the medical opinion of a treating physician is entitled to 'controlling weight' if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" Id. (quoting 20 C.F.R. § 404.1527(c)(2)) (alteration omitted). Section 404.1527(c)(2) also stipulates that if the Law Judge does not accord a medical opinion controlling weight under the treating physician rule, the Law Judge must consider six factors to determine the weight the opinion should receive:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability, i.e., the extent to which the treating physician presents relevant evidence to support the medical opinion; (4) consistency, i.e., the extent to which the opinion is consistent with the evidence in the record; (5) the extent to which the treating physician is a specialist opining as to issues related to his or her area

---

[4] The court notes that an additional consultative opinion reaching the same conclusion appears in the record, but the court is unable to determine the state consultant's name or the date rendered. (See R. 98.)

[5] Although the court notes that 20 C.F.R. § 404.1520c has replaced 20 C.F.R. § 404.1527 as the regulation governing the evaluation of medical opinion evidence, 20 C.F.R. § 404.1527 "still applies to all Social Security claims filed before March 2, 2017, and thus, remains the applicable regulation in this case." Dowling, at 986 F.3d at 384 n.8.

9

>> of specialty; and (6) any other factors raised by the parties which tend to support or contradict the medical opinion.

Id. (quoting 20 C.F.R. § 404.1527(c)) (quotation marks and alterations omitted).

Moreover, under the Social Security regulations governing at the time Plaintiff filed his claim, a physician assistant was not listed as an "[a]cceptable medical source." 20 C.F.R. § 404.1513(a) (2014). Indeed, the present regulations expressly stipulate that a "Licensed Physician Assistant for impairments within his or her licensed scope of practice" constitutes an acceptable medical source "only with respect to claims filed on or after March 27, 2017." 20 C.F.R. § 404.1502(a)(8) (2021) (citation omitted). As stated previously, Plaintiff's claim was filed before March 27, 2017. Therefore, the medical opinions of Christopher Lentz, PA-C, are not subject to controlling weight. See Adkins v. Colvin, No. 4:13-cv-00024, 2014 WL 3734331, at *3 (W.D. Va. July 28, 2014) (Kiser, J.) ("Only 'acceptable medical sources' can provide medical opinions and be considered treating sources whose medical opinions may be entitled to controlling weight.") (citation omitted). Instead, Social Security Ruling 06-03p instructs that "[t]he evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case," and that "[e]ach case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case." SSR 06-03p, 2006 WL 2329939, at *6.

Here, Plaintiff argues the Law Judge ignored evidence supporting the treating physician's and physician assistant's medical opinions. For the following reasons, the court disagrees, and concludes that the Law Judge properly weighed the opinions of both Dr. Gaylord and Mr. Lentz. The Law Judge expressly noted and considered the factors listed in 20 C.F.R. § 404.1527. (R. 1541–45.) Specifically, the Law Judge noted that Mr. Lentz had been Plaintiff's treating physician's assistant since March 2012 and had treated Plaintiff for avascular necrosis of both hips,

Crohn's disease, low back pain, and depression. (R. 1541.) The Law Judge also noted that Mr. Lentz's opinions were issued years after Plaintiff's date last insured, but that Mr. Lentz indicated that the symptoms referenced in the opinions dated back to January 2008. (R. 1541–42.) The Law Judge then weighed the relevant medical evidence and found that it did not support Mr. Lentz's medical opinions. (R. 1541–43.) Given that "[o]nly 'acceptable medical sources' can provide medical opinions and be considered treating sources whose medical opinions may be entitled to controlling weight," the court cannot conclude that the Law Judge erred in his evaluation of Physician Assistant Chris Lentz's medical opinions. Adkins, 2014 WL 3734331, at *3.

The Law Judge also properly evaluated the medical opinions of Dr. Gaylord. As with Mr. Lentz's opinions, the Law Judge noted that Dr. Gaylord's medical opinions were issued years after Plaintiff's date last insured but that Dr. Gaylor reported that the symptoms described in the opinions dated back to 2008. (R. 1541–42.) The Law Judge then recited the factors listed in 20 CFR § 404.1527, and ultimately found the opinions unpersuasive. (R. 1543–44.) After considering the objective medical evidence and examination notes, the Law Judge concluded that Plaintiff had fewer limitations than those opined by Dr. Gaylord. (R. 1544.) Upon review of the record, the court is unable to find that the Law Judge ignored evidence or erred in his assessment of Dr. Gaylord's medical opinions.

Second, Plaintiff argues that the Law Judge (1) did not properly determine his RFC and (2) failed to explain what evidence supports both his mental and physical RFC findings. Social Security Ruling 96-8p, 1996 SSR LEXIS 5 (July 2, 1996), discusses how a Law Judge should assess a claimant's RFC. See Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). The Ruling instructs the Law Judge to make "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." 1996 SSR LEXIS 5, at *8. The

11

Ruling further explains that the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Id. at *19. "In other words, the [Law Judge] must both identify evidence that supports his conclusion and build an accurate and logical bridge from [that] evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (second alteration in original) (internal quotation marks and citations omitted).

The United States Court of Appeals for the Fourth Circuit has "rejected a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis" as required by the Ruling. Mascio, 780 F.3d at 636. Instead, the Court has explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). In Mascio, the Law Judge credited the claimant's diagnosis of an adjustment disorder and also found that she had moderate difficulties with concentration, persistence, or pace. 780 F.3d at 638. However, the Law Judge erroneously "'ignor[ed] (without explanation) Mascio's moderate limitation in her ability to maintain her concentration, persistence, or pace' when he conducted the function-by-function analysis, and 'said nothing about Mascio's mental limitations' in the hypothetical posed to the vocational expert." Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (alteration in original) (citation omitted) (quoting Mascio, 780 F.3d at 633, 637). Because the Law Judge "gave no explanation" for these omissions, a remand was required. Mascio, 780 F.3d at 638.

The Fourth Circuit has since explained that Mascio "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a

specific limitation in the RFC." Shinaberry, 952 F.3d at 121. Instead, the decision underscored the importance of explaining how RFC findings adequately account for a claimant's work-related limitations. Id.; see also Mascio, 631 F.3d at 638 ("For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would [be] appropriate to exclude it from the hypothetical tendered to the vocational expert."). Moreover, "[w]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." Shinaberry, 952 F.3d at 121 (internal quotation marks and citation omitted). Thus, "as is usually true in determining the substantiality of evidence," a "case-by-case" inquiry is required. Id. (internal quotation marks and citation omitted).

In this case, it is clear that the Law Judge considered all of Plaintiff's complained of limitations and all relevant medical evidence in formulating Plaintiff's RFC. The Law Judge first noted Plaintiff's complaints of hip pain, digestive disorder, hypertension, posttraumatic stress disorder, cervical spine impairment, fibromyalgia, left knee pain, headaches, and chronic obstructive pulmonary disease. (R. 1538.) The Law Judge also acknowledged Plaintiff's additional complaints of pain, but pointed to medical reports showing that Plaintiff's pain was effectively managed through rest and prescribed medication. (R. 1538.) Moreover, the Law Judge pointed to several physical impairments Plaintiff complained of, including fatigue, dizziness, colitis, irritable bowel syndrome flares, pancreatitis, and avascular necrosis, amongst others. (R. 1538–39.) The Law Judge also reviewed Plaintiff's complaints of anxiety, depression, impaired memory, nightmares, difficulty concentrating, and attention deficit/hyperactivity disorder. (R. 1538–40.)

The Law Judge then analyzed Plaintiff's medical records, which showed that Plaintiff's pain was managed with prescribed medicine and that Plaintiff was advised by medical providers to increase his exercise activity to better control his blood pressure. (R. 1538–40.) The Law Judge also noted that Plaintiff "continued to endorse benefit from his pain medication" and reported to medical providers his ability to "perform chores around the house, yard work, and activities of daily living." (R. 1540.) The Law Judge pointed out that Plaintiff was advised that surgical intervention was not necessary for his pain, that Plaintiff "continued to report good benefit from his pain medication," and that Plaintiff denied any symptoms of Crohn's disease. (R. 1540.) Moreover, the Law Judge also noted that Plaintiff reported improved mood due to "eating well, exercising, socializing with others, and staying active," that medical records showed that Plaintiff "did not exhibit deficits in memory functions prior to the date last insured," and that Plaintiff reported having friends to medical providers but complained of issues with groups of people he did not know. (R. 1541, 1544.) The court notes that the medical record also includes psychiatric evaluations from the relevant period reporting intact memory, good attention, and good insight/judgment. (R. 595, 601.) Moreover, state consultative medical examiners Thomas M. Phillips, MD, and Jack Hutcheson, MD, issued respective reports on May 14, 2014, and May 13, 2014, acknowledging that Plaintiff has "a history of severe joint problems," but concluding that "there is not enough evidence to make a full decision on severity before the [date last insured]." (R. 87, 97.) Finally, the court notes that state consultant Howard S. Leizer, Ph.D., opined in 2014 that as to anxiety and affective disorders, Plaintiff "does have a history of some severe disorders, but there is insufficient information to make a decision on severity before the [date last insured]."

After finally reviewing medical opinion reports, from Mr. Lentz and Dr. Gaylord, the Law Judge concluded that Plaintiff's "statements concerning the intensity, persistence, and limiting

14

effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 1542.) The Law Judge then found that there were no persuasive medical opinions or additional medical evidence that would support more significant limitations than those the Law Judge imposed. (R. 1542–45.) Upon review of the record, the court is thus convinced that the Law Judge's treatment of plaintiff's claimed limitations is consistent with the protocol established in Mascio and Monroe v. Colvin, 826 F.3d 176 (4th Cir. 2016), and that substantial evidence supports the Law Judge's evaluation of plaintiff's residual functional capacity through the date last insured.

Third, Plaintiff argues that the Law Judge did not properly evaluate his subjective complaints. When evaluating a claimant's subjective complaints, a Law Judge must follow the two-step framework provided for in 20 C.F.R. § 404.1529 and SSR 13-3p, 2016 WL 1119029 (Mar. 16, 2016). Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 95 (4th Cir. 2020). First, the Law Judge must decide "whether the objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." Id. (quoting 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3). Next, "after finding a medically determinable impairment, the [Law Judge] must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." Id. (citing 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4). At this step in the process, the Law Judge need not rely on objective evidence to conclude that the claimant is disabled. Id.

Here, the court concludes that the Law Judge did not err in evaluating Plaintiff's subjective complaints. As discussed previously, the Law Judge addressed Plaintiff's allegations concerning physical and emotional symptoms but found the subjective complaints inconsistent with both

15

Plaintiff's treatment records and Plaintiff's testimony about his daily activities. (R. 1538–44.) Indeed, the Law Judge noted that the medical evidence showed that Plaintiff's chronic pain was well-managed with his prescribed medicine during the relevant time period, that Plaintiff's Crohn's disease was asymptomatic, and that Plaintiff exhibited an intact memory, good attention, and good insight/judgment. (R. 1542–44.) The Law Judge thoroughly reviewed both Plaintiff's allegations and the medical evidence. Thus, the court concludes that the Law Judge properly analyzed Plaintiff's subjective complaints.

Finally, Plaintiff contends that the Law Judge failed to properly consider Plaintiff's disability determination issued by the Department of Veterans Affairs (the "VA"). In <u>Bird v. Commissioner of Social Security Administration</u>, the Fourth Circuit ruled "that a VA disability determination must be accorded substantial weight in Social Security disability proceedings." 699 F.3d 337, 345 (4th Cir. 2012). The court cautioned, however, that "because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate." <u>Id.</u> at 343. Here, The Law Judge noted in his decision that under the VA disability rating system, Plaintiff "was considered to have a ninety percent service connected disability during the adjudicated period, including fifty percent for his hip prosthesis and thirty percent for colitis." (R. 1544.) However, the Law Judge chose to accord less weight to Plaintiff's VA disability rating. (R. 1544.) In doing so, the Law Judge noted that Plaintiff's "gastrointestinal issues were asymptomatic during the period at issue," and that Plaintiff's medications adequately managed his chronic pain issues. (R. 1544.) Overall, the court cannot conclude that the Law Judge committed error when he chose to deviate from Plaintiff's VA disability rating.

In sum, after a <u>de</u> <u>novo</u> review of the record and for the reasons set forth above, the court is constrained to conclude that the final decision of the Commissioner is supported by substantial evidence. Accordingly, the plaintiff's objections to the magistrate judge's report are overruled, the magistrate judge's recommendation will be adopted, and the final decision of the Commissioner will be affirmed.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 20th day of April, 2021.

_____
Senior United States District Judge